Georgia TOWNSEND et al., Plaintiffs,

v.

Arthur F. QUERN et al., Defendants.

No. 68 C 2134.

United States District Court,
N. D. Illinois, E. D.

June 28, 1979.

Michael R. Lefkow, James O. Latturner, Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., for defendants; William A. Wenzel, Special Asst. Atty. Gen., Chicago, Ill., of counsel.

## MEMORANDUM OPINION

*Motion for Notice to Class*

MAROVITZ, District Judge.

This motion arises out of a class action brought by plaintiffs in 1968, challenging the validity of Article IV, § 4–1.1 of the Illinois Public Aid Code, Ill.Rev.Stat. (1967) ch. 23, § 4–1.1 and Illinois Public Aid regulation 150, promulgated thereunder. Section 4–1.1 provided that needy children who are deprived of parental support, are between eighteen and twenty-one years old and are in regular attendance in high school, vocational school or technical training school are eligible to receive aid to families with dependent children benefits (AFDC). Plaintiffs alleged that Section 4–1.1 was inconsistent with Section 406(a)(2) of the Social Security Act, 42 U.S.C. § 606(a)(2), in its provision of AFDC benefits for children between 18 and 21 attending high school, vocational school and technical school, while excluding those in the same age group attending college. Plaintiffs challenged Section 4–1.1 as void under the supremacy and equal protection clauses.

The issues raised by defendants' objections to the pending motion must be considered in view of the procedural history of this case. On March 26, 1969, we denied defendants' motion to dismiss and strike, convened a three-judge court and granted the motion of plaintiffs Georgia Townsend and her daughter, Omega Minor, to intervene individually and as members of the class. *Alexander v. Swank*, 314 F.Supp. 1078 (N.D.Ill.1969). On April 30, 1970, the three-judge court dismissed this action, thereby upholding the policy of the Department of Public Aid under Section 4–1.1. *Alexander v. Swank*, 314 F.Supp. 1082 (N.D.Ill.1970). The United States Supreme Court reversed the decision of the three-judge court on December 20, 1971, holding that the Illinois policy was violative of the supremacy clause. *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). On January 7, 1972, the mandate of the Supreme Court was filed with this Court and on January 21, 1972, this Court entered an order granting plaintiffs prospective relief.

We were then left with the question of whether to order retroactive relief, in the form of an injunction requiring defendants to notify members of the plaintiff class that they are entitled to an AFDC grant for the period in which they were wrongfully denied benefits. On June 30, 1972, we rendered a Memorandum Opinion which held that plaintiffs were entitled to retroactive relief. *Alexander v. Weaver*, 345 F.Supp. 666 (N.D.Ill.1972). Retroactive relief was ordered in November 1972. Defendants mistakenly appealed the order to the Supreme Court. On May 29, 1973, the Supreme Court remanded the cause to this Court for a fresh judgment to enable defendants to properly bring their appeal to the Seventh Circuit Court of Appeals. *Edelman v. Townsend*, 412 U.S. 914, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973). A new judgment was entered in July 1973, again ordering retroactive relief.

On March 25, 1974, the Supreme Court reversed the Court of Appeals' ruling in a similar case that retroactive relief was not barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Supreme Court remanded *Edelman* to the District Court, Judge Will presiding, for further proceedings. On the basis of *Edelman*, the Court of Appeals reversed this Courts' award of retroactive relief in the case at bar. *Townsend v. Edelman*, 518 F.2d 116 (7th Cir. 1975). The ruling of the Court of Appeals was entered on June 2, 1975. On July 1, 1975, the Court of Appeals stayed its mandate for thirty days, pending application by plaintiffs for a writ of certiorari to the Supreme Court. Plaintiffs did not apply for certiorari, the stay expired on August 1, 1975 and the mandate of the Court of Appeals was filed with this Court on September 5, 1975.

Meanwhile, on remand from *Edelman v. Jordan, supra,* Judge Will ordered the defendants in that case to give the plaintiff class members notice of their right to *seek* retroactive payment through state adminis-

trative procedures. *Jordan v. Trainor*, 405 F.Supp. 802 (N.D.Ill.1976). Judge Will stayed his order, however, pending appeal.

On September 10, 1976, shortly after Judge Will issued his order in *Jordan v. Trainor, supra,* plaintiffs filed the motion now pending in this case. Plaintiffs then sought essentially the same relief granted in *Jordan*, which is markedly similar to the case at bar in issues of remedy. Both cases share many of the same defendants. At that time, defendants did not contest plaintiffs' motion, but rather agreed with plaintiffs and this Court that a ruling should be deferred until the appeal of Judge Will's order was finally resolved.

In *Jordan v. Trainor*, 551 F.2d 152 (7th Cir. 1977), a panel of the Court of Appeals reversed Judge Will's order. Rehearing *en banc* was granted on April 25, 1977 and on October 19, 1977, the Court of Appeals reversed the panel decision and affirmed the order of Judge Will, subject to certain modifications. *Jordan v. Trainor*, 563 F.2d 873 (7th Cir. 1977) (*en banc*). The Supreme Court granted certiorari and on March 5, 1979, affirmed the *en banc* ruling of the Court of Appeals. *Quern v. Jordan*, —— U.S. ——, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). *Jordan* is currently pending before Judge Will on remand from the Supreme Court.

I.

Pending before this Court is plaintiffs' motion of September 10, 1976, for notice to the class. Upon reviewing the most recent pronouncement from the Supreme Court in *Quern v. Jordan, supra,* and the Court of Appeals' 1975 ruling in the case at bar, we are now prepared to issue a decision on plaintiffs' motion, which we believe will set this case on the final leg of its long journey to resolution.

It is important to clarify exactly what form of notice to their class members plaintiffs now seek. Plaintiffs concede, as they must in light of *Jordan v. Trainor*, 563 F.2d 873 (7th Cir. 1977) and *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), that the form of notice contemplated

by Judge Will (405 F.Supp. at 809–810) is violative of the Eleventh Amendment. On the other hand, there is no question that a modified form of that notice, as expressed by the Court of Appeals in its *en banc* opinion and by the Supreme Court in its affirmance, is constitutionally proper if ancillary to prospective relief.

Both Courts contemplate an order that contains no admission by the State of Illinois that each member of the plaintiff class was denied public benefits to which he or she was entitled. 563 F.2d at 875. In the words of Mr. Justice Rehnquist, the notice may simply inform "class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." 99 S.Ct. at 1149.

Although plaintiffs have submitted no draft of the notice they move this Court to order, plaintiffs concede that the notice must be fashioned within the strictures of the Eleventh Amendment, in accord with the opinion of the Supreme Court in *Quern v. Jordan, supra.* For the reasons set forth below, plaintiffs' motion for notice to the class is granted.

II.

Essentially, defendants' objections to plaintiffs' motion for notice are threefold. Defendants first contend that this Court lacks jurisdiction over plaintiffs' motion because the mandate of the Court of Appeals, filed with this Court on September 5, 1975, was the final resolution of this case. Second, defendants argue that plaintiffs are guilty of *laches* by filing their motion a year after the mandate of the Court of Appeals was filed in district court. Finally, defendants assert that to order notice to the members of the plaintiff class at this late date would work an unreasonable burden on defendants. Defendants ask that, should we determine that plaintiffs' motion is properly before us, we grant defendants sufficient time to muster evidence of the economic and administrative burdens that would result from notice relief.

## A.

Defendants first argue that this case was closed when the Court of Appeals reversed our order granting retroactive relief and the mandate of the Court of Appeals was filed with this Court on September 5, 1975. Essentially, defendants contend that the mandate of the Court of Appeals, reversing this Court's order without remanding the cause for further proceedings, was a "final decision" which "ends the litigation on the merits and leaves nothing for the [trial] court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Defendants, therefore, seek to bar further proceedings in this matter on the ground of *res judicata*.

Although defendants concede that the District Court in *Jordan* is presently considering granting relief similar to that which plaintiffs seek here, defendants point out two distinguishing factors between the procedural posture of that case and the case at bar. In *Jordan*, the Supreme Court reversed the order of retroactive relief and remanded the case to the District Court for further proceedings. *Edelman v. Jordan, supra*. In this case, however, the Court of Appeals issued no instructions to the District Court when it reversed the order of the District Court, except to stay the mandate to allow plaintiffs to request review by the Supreme Court. Defendants contend that the reversal without remand in 518 F.2d 116 caused the Court of Appeals' decision to be the law of the case. *Clark v. Travelers Indemnity Company*, 328 F.2d 819 (7th Cir. 1964). Defendants argue that this Court has no power to deviate from the mandate issued by the Court of Appeals. *Cf., Briggs v. Pennsylvania Railroad Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948).

Defendants also assert that plaintiffs failed to move, either under Rule 59 or Rule 60(b)(6), Fed.R.Civ.P., to reopen the final judgment of the Court of Appeals. Defendants note that plaintiffs never applied for certiorari and, in fact, waited a year to bring this motion unlike the *Jordan* plaintiffs who filed their motion one day after the mandate of the Supreme Court was filed with Judge Will.

To determine the viability of these jurisdictional objections, plaintiffs' pending motion must be viewed in the context of the issues raised before and resolved by the Court of Appeals in *Townsend v. Edelman*, 518 F.2d 116 (7th Cir. 1975). The initial ruling of the Supreme Court in this case reversed the decision of the three-judge court (314 F.Supp. 1082) and held that the State's AFDC policy violated the supremacy clause. On January 7, 1972 the mandate of the Supreme Court was filed with this Court and we subsequently entered an order granting *prospective* relief to plaintiffs. That order was not appealed to any reviewing court. In November 1972 this Court ordered *retroactive* relief pursuant to the Memorandum Opinion of June 30, 1972 (*Alexander v. Weaver*, 345 F.Supp. 666 [N.D. Ill.1972]), which found that retroactive relief was proper under Paragraph 8 of the June 21, 1972 order. It was the order for retroactive relief, and only that order, which eventually found its way into the Court of Appeals. See, *Edelman v. Townsend*, 412 U.S. 914, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Townsend v. Edelman*, 518 F.2d 116, 120 (7th Cir. 1975). The appealed order pertained only to *retroactive* relief.

To be sure, at the outset of its opinion the Court of Appeals explicitly detailed the exact questions before it:

This appeal and cross-appeal raise two issues. First, whether a monetary award in the form of benefits withheld from the plaintiff class by defendant state officials is barred by the Eleventh Amendment. Second, whether attorneys' fees can be assessed against the defendants for defending the Illinois statute and policy challenged by this action. 518 F.2d at 118.

We find it beyond dispute that the Court of Appeals' ruling, and its mandate filed with this Court on September 5, 1975, had no effect on this Court's grant of prospective relief. As the Supreme Court noted, "[t]he doctrine of law of the case comes into

play only with respect to issues previously determined. *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 16 S.Ct. 291, 40 L.Ed. 414 (1895)." *Quern v. Jordan, supra,* 99 S.Ct., at 1148 n.18. Indeed, the Court of Appeals, while addressing the question of attorneys' fees, intimated that this Court retained jurisdiction over matters relating to its prospective injunction. *Townsend v. Edelman, supra,* 518 F.2d, at 124 n. 17. Similarly, the *Townsend* Court determined that it was not precluded from hearing defendants' Eleventh Amendment claim by the Supreme Court mandate in *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) because the Supreme Court did not address the Eleventh Amendment issue and its opinion made no reference to retroactive monetary relief.

██ We conclude, therefore, that although the mandate of September 5, 1975 may be *res judicata* as to matters of retroactive relief, it had no effect on our order of prospective relief. In *Quern v. Jordan, supra,* the Supreme Court made clear the nature of the relief plaintiffs seek in their motion for notice to class:

> The notice approved by the Court of Appeals, unlike that ordered by the District Court, *is more properly viewed as ancillary to the prospective relief already ordered by the court.* See *Milliken v. Bradley,* 433 U.S. [267], at 290, 97 S.Ct. [2749], at 2762 [53 L.Ed.2d 745]. The notice in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue. Petitioners raise no objection to the expense of preparing or sending it. The class members are "given no more . . than what they would have gathered by sitting in the courtroom." *Jordan v. Trainor,* 563 F.2d, at 877–878. The judgment of the Court of Appeals is therefore *affirmed.* 99 S.Ct., at 1149.

Indeed, the holding that notice relief is ancillary to prospective relief is the sole point upon which all nine justices of the

*Quern v. Jordan* court could agree. See 99 S.Ct., at 1150 (Brennan, J., concurring) and 99 S.Ct., at 1158 (Marshall, J., concurring).

██ In summary, although *Jordan* was reversed and remanded, and this case was simply reversed, the mandate of the Court of Appeals did not affect this Court's power to grant the prospective relief which plaintiffs seek. We therefore hold that this Court has jurisdiction to rule on plaintiffs' motion.

## B.

Defendants next object to plaintiffs' purported delay in filing their motion for notice relief. Defendants point out that while the plaintiffs in *Jordan* filed their similar motion one day after the Supreme Court mandate was filed in district court, plaintiffs in the case at bar delayed more than a year after the Court of Appeals' mandate was filed. Defendants contend, therefore, that plaintiffs are guilty of *laches* and should thus be barred from bringing this motion. See *Yanow v. Weyerhaeuser Steamship Company,* 274 F.2d 274 (9th Cir. 1959); *Helene Curtis Industries, Inc. v. Dinerstein,* 17 F.R.D. 223 (E.D.N.Y.1955).

Plaintiffs, on the other hand, argue that defendants offer no proof that plaintiffs lacked diligence by bringing their motion in September 1976 and fail to show how defendants would be prejudiced by the assertedly untimely filing.

██ Regardless of plaintiffs' diligence or lack of diligence in filing this motion, any claim that plaintiffs' delay was prejudicial is greatly diminished in view of the posture of this case. It is an age old axiom that equity will not do a useless thing. *A priori,* an equitable defense, such as *laches,* is patently inapplicable where the policy behind the doctrine would not be furthered by its application. By agreeing to defer ruling on this motion, until the Supreme Court rendered its decision in *Quern v. Jordan, supra,* defendants must concede that it would have been useless to rule on this motion before a pronouncement by the Supreme Court on the issue raised by the motion.

Defendants do not show any way in which the delay in filing would prejudice either their defense to the motion or their ability to comply with an order of the Court should the motion be granted. We therefore reject defendants' charge of *laches.*

### C.

Defendants' final objection to plaintiffs' motion goes to the equities of granting the relief which plaintiffs seek. Defendants ask that should this Court decide to grant notice relief, they be afforded the opportunity to present evidence regarding the equities of issuing such an order at this late date. Defendants point out that Judge Will, in the *Jordan* case, has pending before him the questions of burden that may be incurred by defendants should notice relief be ordered and the form the notice should take. Defendants also note that in *Quern v. Jordan, supra,* the Supreme Court implied that the District Court should consider the economics of granting notice relief. 99 S.Ct., at 1142 n. 3; 1148 n. 18.

We are not unmindful of the burdens that may be imposed by ordering notice relief now in a case that was filed eleven years ago. We are obliged to point out, however, some fundamental differences between the posture of the *Jordan* case and the case at bar. In *Jordan*, the defendants never raised costs as a defense to the equitable relief requested. In this case, however, we had long ago overruled defendants' objection to the administrative costs that may be incurred by a grant of retroactive relief. See 345 F.Supp., at 674. Defendants also raised their objection to costs before the three-judge court. That Court, with all three judges concurring, denied a motion to stay an order to define and determine the members of the class who may have been entitled to retroactive benefits pending defendants' appeal to the Supreme Court:

> We do however deny a stay in regard to the order that the defendants proceed to define and determine the class to whom the benefits are to be awarded. If our case is affirmed we do not want the State at that time to say they need another year to determine who is eligible for retroactive benefits. The information should be available at the time the Supreme Court decides the case so that payments can begin soon thereafter in the event we are affirmed. *Thus while a stay is justified in terms of the total outlay involved in retroactive payments it is not justified in regard to the much smaller administrative cost that will be necessary in order to prepare the eligible class for payment.* We realize that some cost will be incurred by the State in gearing up for payments as required by our January and November 1972 orders, a cost that may prove superfluous should the Supreme Court reverse, but this case has already extended over four years and the cost is justified to prevent any further delay once the issue is fully and finally resolved. Order of March 3, 1973 (emphasis added).

Although this case has now been pending for eleven years, defendants have only asserted that their position with regard to administrative costs may have changed. In our judgment, however, the administrative burdens which may be imposed by a grant of notice relief ancillary to the prospective injunction should be no different than those imposed by the order which had defendants prepare the eligible class for retroactive relief. Indeed, subsequent to the order of March 3, 1973, defendants complied by sending notice to the class members advising them that they were entitled to retroactive relief, subject to further appeals by the State. Defendants received approximately 1,400 cards from class members which indicated eligibility for benefits. Counsel for plaintiffs verified the existence of the cards and defendants were instructed by this Court to carefully preserve the cards. Plaintiffs' Mem. in Reply to Defendants' Objections, p. 8.

As plaintiffs argue, because the class has already been identified, a new notice ancillary to the grant of prospective relief can easily be sent. Plaintiffs assert that those notices which conceivably may be returned

by the Post Office because of address changes can be properly forwarded by checking the names of the class members against the State's computer tapes. *Cf., Quern v. Jordan, supra,* 99 S.Ct., at 1142 n. 3. Plaintiffs also imply that newspaper notice may be appropriate for those class members who cannot be reached by other means.

■ We are therefore convinced that the most burdensome aspects of an order for notice relief have already been resolved through the course of this litigation. Further comparison between this case and *Jordan* dissuades us from delaying the prospective notice relief to which plaintiffs are unquestionably entitled. The class in *Jordan* is comprised of 20,000 to 35,000 members. Plaintiffs here assert that the class is comprised of approximately 1,400 members. A claim of administrative burden in this case, therefore, cannot be advanced with as much strength as in *Jordan*. Defendants merely speculate that, if afforded sufficient time, they may be able to muster support for their renewed objection to administrative costs.

Although we are aware that pertinent records may be lost or destroyed during the span of such lengthy litigation, we are not particularly sympathetic to defendants' position. A substantial portion of the delay in resolution of this case is clearly the fault of defendants. From June 30, 1972 to July 1973, this case was delayed by defendants' failure to appeal a decision to the proper court. In other instances, such as when contempt proceedings were required to secure defendants' compliance with the first order to send notices, defendants' efforts to move this case to resolution may be described as begrudging. Any further grant of time at this late date would simply be dilatory.

We therefore deny defendants' request for additional time in which to present evidence of administrative burdens that may be imposed by ordering notice relief. In our judgment, the class members have been denied their remedy for too long of a time. As we stated in *Alexander v. Weaver*, 345

F.Supp. 666, 674 (N.D.Ill.1972), "[y]esterday's physical suffering ought not be written off against tomorrow's administrative distress." Class members should immediately be notified of the conclusion of this action and their right to pursue state administrative remedies.

### III.

Accordingly, plaintiffs' motion for notice to class is granted and defendants' objections to plaintiffs' motion are overruled. Plaintiffs are directed to submit a draft of the notice they seek to have sent, which comports with the standards set by the Supreme Court in *Quern v. Jordan, supra,* for approval by this Court. Defendants are directed to immediately organize their records of the members of the plaintiff class to enable rapid dissemination of the notices.

EXHIBIT A

Date: _____

Illinois Department of Public Aid
NOTICE OF RIGHT TO APPEAL
DENIAL OF BENEFITS

During a period between July 30, 1965 and June 30, 1972, you were denied AFDC benefits on behalf of a dependent child or children who was/were between the ages of 18 through 20 and attending a junior college, college or university. You were previously notified of this fact in 1973 and you returned a card to the Illinois Department of Public Aid stating facts that indicated you had a child in this age group who was attending a junior college, college or university.

As a result of a federal court order, the Illinois Department of Public Aid is required to inform you, as a member of the plaintiff class in *Townsend v. Quern*, No. 68 C 2134 (N.D.Ill.), that your federal suit is at an end and that the federal court can provide you with no further relief. However, there are existing state administrative procedures which you may pursue in an effort to collect any benefits to which you may have previously been entitled. Enclosed

herewith is a Notice of Appeal which you should complete and mail to the Illinois Department of Public Aid in the enclosed envelope, if you wish to appeal the previous denial of your benefits. This notice of appeal must be mailed within sixty (60) days from the date of this notice.

If you have questions concerning this notice, you may contact the legal services program available in your community. [Attach list of legal services resources which is sent with Notice of Change, as required in *McCottrell v. McDowell*, No. 72 C 2978].